UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

BRIEN PENNELL                           :
                                        :
v.                                      :         C.A. No. 20-00116-WES
                                        :
WARDEN DANIEL MARTIN, et al.            :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommended disposition (28 U.S.C. § 636(b)(1)(B)) is Defendants' Motion to Dismiss this action pursuant to Rule 12(b)(6), Fed. R. Civ. P. (ECF No. 7). Plaintiff opposes the Motion. (ECF No. 13). After reviewing the pleadings and arguments of the parties, I recommend that Defendants' Motion be DENIED as to Count I and GRANTED as to Count II.

**A.     Facts**

At the time he filed his Complaint, Plaintiff Brien Pennell resided at the Donald W. Wyatt Detention Facility (the "Facility") as a pre-sentencing detainee. On February 20, 2020, Mr. Pennell was sentenced to a term of imprisonment of fifteen years after pleading guilty to a charge of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and § 2252A(b)(1). See USA v. Pennell, 3:19-CR-168 (RNC) in the United States District Court, District of Connecticut. After sentencing, he was transferred to the FCI- Fairton, where he currently resides.

The allegations underlying Mr. Pennell's Complaint occurred while Plaintiff was a pretrial detainee and resident of the A-Dorm at the Facility. ECF No. 1-1 at ¶ 9. Mr. Pennell, as well as two other A-dorm detainees, Jason Boudreau and Joseph Grossman, all filed similar grievances and lawsuits stemming from the events that occurred during lockdowns on or about November 19-

20, 2019.  All three detainees filed their lawsuits in state court, but only Plaintiff's case and Mr. Grossman's case (C.A. No. 20-48-JJM) have been removed to this Court.

The A-Dorm consists of a dormitory and a day room with a recreation area and bathroom facilities.  Id. at ¶ 10.  Plaintiff claims that the Facility kept all detainees in the dormitory area during lockdowns.  He alleges that the dormitory area does not have bathroom facilities, but that prior to the November 19, 2019 lockdown, detainees could leave their cells during lockdown to access bathroom facilities and obtain cold water.  Id. at ¶¶ 15, 17-20.  The Complaint states that during lockdowns on November 19 and 20, 2019, Security Officer Erika Carter ("Security Officer Carter") told Plaintiff and others that detainees could not obtain water while the A-Dorm was on lockdown.  Id. at ¶¶ 17-23.  In response, Plaintiff filed a grievance.  Id. at ¶¶ 23, 26. In the grievance, Mr. Pennell alleges that "Officer Carter today, November 20 at 11:30 a.m. told me I could not get cold water from the sink."  ECF No. 1-1 at p. 12.  The Facility responded to the grievance as follows: "[a] water station was setup in the dorm.  Officer was advised that detainees need to be allowed access to bathrooms."  Id.  Later that day, Warden Daniel Martin ("Warden Martin") informed A-Dorm detainees that they could access water and bathroom facilities during lockdown.  ECF No. 1-1 at ¶ 35.  Warden Martin had the water station placed in the dormitory, so detainees had access to water during lockdowns.  Id. at ¶ 36.

Mr. Pennell alleges that on November 21, 2019, A-Dorm Unit Manager Crystal Caniglia ("Ms. Caniglia") informed him that he had been disrespectful to Security Officer Carter and stated that he could lose his facility job if he continued to be disrespectful to Security Officer Carter.  Id. at 38.  Mr. Pennell also alleges that Warden Martin stated on November 22, 2019 that he could be transferred to another facility.  Id. at ¶¶ 47-52.  Mr. Pennell alleges these warnings are violations

of his right to file a grievance and he responded by filing a two-count complaint against the Facility: Count I alleges Retaliation in Exercise of First Amendment Rights and Count II alleges Violation of the Fourteenth Amendment/Equal Protection Clause.

### B.     Standard of Review

Under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, see Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994); taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995).  If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied.  Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994).

While a plaintiff need not plead factual allegations in great detail, the allegations must be sufficiently precise to raise a right to relief beyond mere speculation.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) (abrogating the "no set of facts" rule of Conley v. Gibson, 355 U.S. 41, 44-45 (1957)).  "The complaint must allege 'a plausible entitlement to relief' in order to survive a motion to dismiss."  Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (quoting Twombly, 550 U.S. at 559).  See also Ashcroft v. Iqbal, 556 U.S. 662, 679 ("[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief"). The Court of Appeals has cautioned that the "plausibility" requirement is not akin to a "standard of likely success on the merits," but instead, "the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." Sepulveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010).

In addition, this Court has liberally reviewed Plaintiff's allegations and legal claims since they have been put forth by a pro se litigant. See Haines v. Kerner, 404 U.S. 519, 520-521 (1972).

**C.     Discussion**

Defendants have moved to dismiss the Complaint in its entirety. The Motion to Dismiss in this matter mirrors the Motion filed in response to Joseph Grossman's two-count Complaint based on the same basic facts. See Grossman v. Warden Daniel Martin, C.A. No. 20-48-JJM. In Response to that Motion, Chief Judge McConnell issued a text order that stated: "[t]he Motion is DENIED as to Count One. Mr. Grossman has sufficiently plead an adverse action; to wit, threats by the Defendants' agents that are "of a kind that would deter persons of ordinary firmness from exercising their constitutional rights in the future. The Motion is GRANTED as to Count Two. Mr. Grossman fails to allege plausible facts that any of the Defendants violated his constitutional right to Equal Protection." That text order was entered on March 23, 2020.

In the present case, the parties dispute the relevance of Chief Judge McConnell's text order to this case, as well as the merits of the claims. Plaintiff argues that the Text Order dictates the outcome of the present Motion to Dismiss, whereas Defendants assert in their Reply that the facts in this case are not analogous to those presented in Mr. Grossman's case and the Court should dismiss this case in its entirety. (ECF No. 17). In terms of the factual differences, Defendants note that Mr. Grossman was not employed at the Facility and that he alleged in his Complaint that Defendants threatened to refuse to hire him if he was disrespectful to Officer Carter, whereas Plaintiff was employed at the Facility and was told he could lose his job if his disrespectful behavior continued. Defendants point out that Plaintiff did not lose his job, and they claim the Complaint does not "allege a single adverse employment action against him." ECF No. 17 at p.

2.  Defendants also note that Plaintiff filed a grievance dated November 22, 2019 against Officer Caniglia and appealed the denial of that grievance on December 9, 2019. Defendants contend that Plaintiff cannot adequately state a claim that Defendants retaliated against him because the alleged conduct did not "chill" Plaintiff from continuing to exercise his rights. Defendants characterize the conduct alleged in the Complaint as a "de minimis adverse act" that would not "deter a person of ordinary firmness from the exercise of their First Amendment rights." ECF No. 17 at p. 3. The Court has considered the arguments presented by Defendants, and after reviewing the relevant caselaw, which is discussed below, I am recommending that the District Court follow Chief Judge McConnell's lead.

The standard for stating a retaliation claim under the First Amendment requires a prisoner-plaintiff to allege "1) he engaged in constitutionally protected conduct, 2) prison officials took adverse action against him, 3) with the intent to retaliate against him for engaging in the constitutionally protected conduct and 4) he would not have suffered the adverse action 'but for' the prison officials' retaliatory motive." Schofield v. Clarke, 769 F. Supp. 2d 42, 47 (D. Mass. 2011). Here, the Court must evaluate the claims stated in this pro se Plaintiff's Complaint against the standard of review applicable to a motion to dismiss pursuant to Rule 12(b)(6). Ultimately, the Court concludes that at this stage, the allegations are sufficient to state at least a plausible claim upon which relief could be granted.

Looking at the first prong of the test, Plaintiff sufficiently alleges that he engaged in protected conduct by filing a grievance. See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). As to the second prong, Plaintiff alleges that prison officials threatened him with adverse action (loss of his job or transfer to another prison) in retaliation for filing that grievance. See Dawes v.

Walker, 239 F.3d 489, 493 (2d Cir. 2001) ("retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation."). Accordingly, he has sufficiently plead that prong. Next, the Court considers the third prong, "intent to retaliate." At the motion to dismiss stage, intent, in some circumstances, can be inferred from a "chronology of events which may support an inference of retaliation." Schofield, 769 F. Supp. 2d at 47. In the present case, Plaintiff disagreed with Security Officer Carter's order that he could not obtain water, and filed a grievance as a result. He asserts that he was then threatened with adverse job consequences and warned not to be disrespectful to Officer Carter. The Court finds that intent to retaliate is adequately plead at this stage. Further, the Court finds that Plaintiff has stated enough to survive the dismissal challenge with respect to the fourth prong. While Defendants have proffered a plausible explanation for the events underlying the Complaint that may, in the end, be valid, "Plaintiff's allegations allow for the reasonable inference that retaliatory intent was the but for cause of those actions. No more is needed at this stage." Hudson v. MacEachern, 94 F. Supp. 3d 59, 68 (D. Mass. 2015).

This Court "recognizes the difficulty of operating a prison and the substantial discretion it owes to the judgment of those who do so." Mattei v. Dunbar, No. CIV.A. 13-12195-FDS, 2015 WL 926044, at *5 (D. Mass. Mar. 4, 2015). However, like the Mattei Court, the only query before the Court is whether the Plaintiff has stated a plausible claim based on the allegations contained in his Complaint. I find that "requiring additional support for [Plaintiff's] claims than what he has already provided would impose a standard more stringent than called for in a pro se action." Id. (internal quotation omitted). Accordingly, I recommend that the District Court DENY the Motion to Dismiss as to Count I.

Turning to the Equal Protection claim asserted in Count II, that claim is based on a theory of retaliation. In his Objection, Plaintiff did not address Count II, and upon reviewing the similar facts in Mr. Grossman's case, Chief Judge McConnell found that the equal protection clause claim did not state a claim. Defendants contend that the Plaintiff's Equal Protection Clause claim fails because it rehashes the facts asserted in the First Amendment claim. Having reviewed the facts underlying the purported equal protection claim, the Court agrees. See Rosaura Bldg. Corp. v. Municipality of Mayaguez, 778 F.3d 55, 68 (1st Cir. 2015) (finding that a Plaintiff's equal protection claim fails "because it is a mere restatement of its First Amendment claim and based on the same facts.") Accordingly, I recommend that the District Court GRANT the Motion to dismiss as to Count II.

**Conclusion**

For these reasons, I recommend that Defendants' Motion to Dismiss (ECF No. 7) be DENIED as to Count I and GRANTED as to Count II. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
July 10, 2020